## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| )<br>)<br>THE ESTATE OF DAVID A. CREEK, Susan )<br>Creek, Administratrix; and THE ESTATE OF )<br>LORI CREEK, Beth D. Peters, Administratrix, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>MITTAL STEEL USA, INC., et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 06-701 |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Pending before the Court is Defendants' Mittal Steel US, Inc. ("Mittal"), International

Steel Group ("ISG"), and Pristine Resources' (collectively, "Defendants") Motion for Summary

Judgment [64].  For the following reasons, said motion is **DENIED**.

### II.    FACTUAL BACKGROUND

Plaintiffs Decedents David Creek and Lori Creek drowned in Pigeon Creek located on

Defendants' abandoned mine (hereinafter "Mine 51") in Bentleyville and Ellsworth Boroughs in

Washington County, Pennsylvania on May 8, 2005. (Docket No. 66 at ¶1, 2) (hereinafter

"SOF").  Plaintiffs were riding on an all terrain vehicle (hereinafter "ATV") which went over a

blind cliff, and fell sixty feet into Pigeon Creek below. (Docket No. 67 at p.1 ¶2).  It is alleged

Defendants' wanton, willful and reckless disregard to guard or warn Plaintiffs of a dangerous

condition on Mine 51, described as a blind cliff, proximately caused their injuries and deaths.

(Docket No. 1-3, ¶ 20). Plaintiffs allege that such cliff constituted a trap, that there are no warnings or danger signs warning of such cliff, and that as a result of the Defendants' reckless, willful and wanton negligence, David and Lori Creek drove over the cliff and died. (*Id.* at ¶ 23, 25, 33).

It is undisputed that a similar accident occurred in 2000 on Mine 51 in which two cars drove over the cliff and landed in Pigeon Creek. (SOF at ¶ 25). At the time of the 2000 accident, Mine 51 was owned by Beth Energy. After the accident Beth Energy contracted with MineVironment to monitor Mine 51 and to place danger and warning signs on the property to prevent the occurrence of another such accident. (SOF at ¶ 26). The Beth Energy employee responsible for Mine 51, Jay Hasbrouck, then retired in 2003. (SOF at ¶ 32). Thereafter, Larry Neff, Mr. Hasbrouck's former subordinate, took over his responsibility for Mine 51. (SOF at ¶ 32). The mine was then sold by Beth Energy to Defendants in April of 2003. (SOF at ¶ 33). MineVironment continued to provide its services to Defendants until November of 2003, and the services were terminated because the parties determined that the attempts to keep recreational users off of Mine 51 was futile. (SOF at ¶ 26 ). Larry Neff continued to be responsible for Mine 51 when the accident involving Plaintiffs occurred in May of 2005. (SOF at ¶ 32).

In addition to the accident in 2000, there was another accident that occurred in April of 2005 on the same cliff, prior to the accident involving the Creeks. That accident also resulted in a lawsuit which is currently pending before this Court, captioned *Vorhes v. Mittal Steel USA, Inc., et al.*, Civil Action No. 06-1130.

## III.     PROCEDURAL HISTORY

Plaintiffs originally filed a complaint in the Court of Common Pleas of Allegheny County alleging negligence against the Defendants on March 15, 2006.  (Docket No. 1-3).  On May 26, 2006, said complaint was removed to this Court based on diversity of citizenship under 28 U.S.C. § 1332.  (Docket No. 1).

On October 16, 2006, Judge Thomas M. Hardiman consolidated *Vorhes v. Mittal Steel USA, Inc., et al.*, with this case for discovery purposes only. (*See* Civil Action No. 06-1130, Docket No. 8).  The cases then proceeded through discovery, which is now completed.[1]

On August 28, 2007, Plaintiffs filed their First Amended Complaint to include a claim for piercing the corporate veil. (Docket No. 46).  Thereafter, the Defendants stipulated to certain facts related to the piercing the corporate veil claim and Plaintiffs withdrew their Amended Complaint. (Docket No. 58; Docket No. 60). On November 26, 2007, Defendants filed their Motion for Summary Judgment (Docket No. 64.) to which, the Plaintiffs filed their Brief in Opposition to Defendants' Motion for Summary Judgment on December 19, 2007.  (Docket No. 74).  Subsequently, Defendants filed their Reply Brief in Support of their Motion for Summary Judgment (Docket No. 77) and Plaintiffs filed a sur-reply brief on February 5, 2008. (Docket No. 83).

Defendants have filed a Motion for Summary Judgment arguing that they are entitled to immunity from liability under the Pennsylvania Recreational Land and Water Use Act, and also

---

[1]

In the parallel case, *Vorhes v. Mittal Steel USA, Inc., et al.*, this court denied Defendants' motion for summary judgement on March 24, 2008.  (*See* Civil Action No. 06-1130, Docket No. 36; 2008 WL 794460 (W.D.Pa. 2008)).

that Plaintiffs are not able to meet their burden of proving how the accident occurred. (Docket No. 65).

## IV.    LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).  Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249.  "The court may consider any material or evidence

4

that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civil Action No. 05-942, 2008 WL 828033, at *4 (W.D. Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1ˢᵗ Cir. 1993) (citing10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721at 40 (2d ed.1983))); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

V.    **DISCUSSION**

In their Motion for Summary Judgment, Defendants argue that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law because: (1) they should be afforded immunity under the Pennsylvania Recreational Use of Land and Water Act, 68 P.S. § 477-1 (1966); and (2) that the Plaintiffs cannot meet their burden of proving how the accident occurred. (Docket No. 64 at ¶ 7-13). The Court will address each argument, in turn.

**A.      Application of the Pennsylvania Recreational Use of Land and Water Act**[2]

Defendants argue that they are entitled to immunity under the Pennsylvania Recreational Use of Land and Water Act (the "Act"), and that they are entitled to judgment as a matter of law as such immunity applies preventing Plaintiffs from recovering damages for their injuries and deaths.  The stated purpose of the Act is to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability."  68 P.S. § 477-1 (1966).  The Act provides the following:

> Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477-3 (1966).  As stated, the general rule of the Act is subject to the exceptions in section 6, which provide that:

> Nothing in this act limits in any way any liability which otherwise exists:
>
> (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.
>
> (2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

---

[2]
Initially, the Court notes that the Defendants' argument on this issue, in this case, is substantially identical to the argument made in their motion for summary judgment in *Vorhes v. Mittal Steel USA, Inc., et al.*  For that reason the Court's analysis is, likewise, substantially identical to its opinion in *Vorhes*.  *See Vorhes*, 2008 WL 794460, at *3-6.

68 P.S. § 477-6 (1966).  At issue in the instant matter is the interpretation of subsection (1) above as to the meaning of "wilful."[3]

Defendants, relying on a line of district court cases in Pennsylvania, argue that the standard of wilfullness under the Act requires the Plaintiffs to prove that the Defendants had "(1) actual knowledge of a danger; (2) that is not obvious to those entering the premises." *Flohr v. Pennsylvania Power & Light Co.*, 821 F.Supp. 301, 304 (E.D. Pa. 1993) (citing *Livingston v. Pennsylvania Power & Light Co.*, 609 F.Supp. 643, 649 (E.D. Pa. 1985), aff'd 72 F.2d 1029 (3d Cir. 1986);  *See also DePatch v. U.S.*, No. CIV.A. 95-6698, 1996 WL 355355 at *3 (E.D. Pa. June 20, 1996) (unpublished), aff'd 111 F.3d 126 (3d Cir. 1997); *Blake v. U.S.*, No. Civ.A. 97-0807, 1998 WL 111802, at * 8 (E.D. Pa. February 6, 1998) (unpublished); *Anderson v. U.S.*, Civ. A. No. 87-1304, 1988 WL 17018, at * 3 (E.D. Pa. February 25, 1988) (unpublished); *Hinkle v. U.S.*, Civil Action No. 83-6003, 1985 WL 3090, at *3 (E.D.Pa. October 16, 1985); *Capriotti v. Bunnell*, 685 F.Supp. 462, 466 (M.D. Pa. 1988).

Plaintiffs however rely on a Superior Court of Pennsylvania case holding that wilfully under the Act requires not actual knowledge but the lesser "knew or should have known" standard as set forth in the Restatement (Second) of Torts § 342[4] and as applied to gratuitious

---

[3]

Defendants state that there is no evidence that their conduct was malicious.  (Docket No. 65 at 13 n.1).  No further argument is made by the Defendants as to the statutory meaning of "malicious," however, this issue need not be addressed by the Court, at this time.

[4]

Section 342, Dangerous Conditions Known to Trespasser, provides that:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
> (a) the possessor **knows or has reason to know** of the condition and should realize that it involves an unreasonable risk of harm to such

licensees under the common law in Pennsylvania. *Baran v. Pagnotti Enterprises, Inc.*, 402 Pa.

Super 298, 304, 586 A.2d 978, 981 (Pa Super. 1991). However, in a later case, *Stanton v.*

*Lackawanna Energy, Ltd.*, the Superior Court of Pennsylvania cited the actual knowledge

standard to section 477-6. *Stanton*, 820 A.2d at 1263 (Pa. Super 2003) (quoting *Flohr,* 821

F.Supp. at 304) ("Pennsylvania's federal courts, applying RULWA section 6, have opined the

"willfulness under § 477-6 contains two elements: (1) actual knowledge of a danger; [and] (2)

that [the danger] is not obvious to those entering the premises.")).

Further analysis indicates that the standard set forth for wilfulness in both *Baran* and

*Flohr*, descends from the same case, *Kopp v. R. S. Noonan, Inc.*, 385 Pa. 460, 463, 123 A.2d 429

(1956). In *Kopp*, the Supreme Court of Pennsylvania stated the standard of care owed to

gratuitous licensees at common law, that wilfully requires that the possessor knows of a

dangerous condition on its land, citing with authority the Restatement of Torts § 342.[5] *Kopp*,

385 Pa. at 463 ("the possessor of premises is not liable to a gratuitous licensee under such

---

licensees, and should expect that they will not discover or realize the
danger, and
(b) he fails to exercise reasonable care to make the condition safe, or
warn the licensees of the condition and the risk involves, and
(c) the licensees do not ***know or have reason to know*** of the
condition and the risk involved.
RESTATEMENT (SECOND) OF TORTS § 342 (emphasis added).
[5]

The Restatement of Torts § 342 provides that:
A possessor of land is subject to liability for bodily harm caused to
gratuitous licensees by a natural or artificial condition thereon if, but
only if, he (a) ***knows*** of the condition and realizes that it involves an
unreasonable risk to them and has reason to believe that they will not
discover the condition or realize the risk, and (b) invites or permits
them to enter or remain upon the land, without exercising reasonable
care (i) to make the condition reasonably safe, or (ii) to warn them of
the condition and the risk involved therein.
RESTATEMENT OF TORTS § 342 (emphasis added).

8

circumstances except that he be guilty of wilful or wanton injury. The possessor of premises at most owes the duty of reasonable care to disclose to the gratuitous licensees dangerous conditions known to it the possessor and not likely to be discovered by him the gratuitous licensee or to make such conditions reasonably safe.") As stated above, *Baran* applied the standard of care owed to gratuitous licensees at common law, but cited the Restatement (Second) of Torts.

Accordingly, it appears that the divergence in the pertinent case law can be traced to the change of standards in the different versions of the restatement during the time period between the Supreme Court's holding in *Kopp* and the Superior Court's ruling in *Baran*.

Despite this apparent conflict in authority, the Court need not decide the correct standard to impose liability under §477-6 at this time. Rather, for the purposes of this motion, the Court will follow the federal district court cases cited above and apply the actual knowledge standard to determine whether a material issue of fact exists as to whether Defendants acted "wilfully" under the Act. As such, Defendants must show that the admissible evidence in the record is insufficient for the Plaintiffs to prove that Defendants had actual knowledge of the dangerous condition at trial.

Defendants maintain that despite the 2000 accident at Mine 51, the retirement of a key employee, the sale of the company since the accident, and the contracting of maintenance services at the site to MineVironment prevent the instant Plaintiffs from proving that Defendants had actual knowledge of the alleged dangerous condition, and that they are entitled to judgment as a matter of law. Specifically, Defendants contend that Pristine Resources, through its

supervisor, Larry Neff, did not have actual knowledge of the inherent danger at the cliff site at Mine 51 where Plaintiffs' accident occurred.

In response, Plaintiffs have produced evidence coupled with certain admissions by the Defendants, that challenges the contention that Defendants did not have actual knowledge of the dangerous condition at Mine 51. Jay Hasbrouck Jr., Mr. Neff's former supervisor (while both were employees at Beth Energy) was responsible for Mine 51. (SOF at ¶ 19). Mr. Hasbrouck had actual knowledge of the dangerous condition of the blind hill or cliff at Mine 51 after an accident occurred in 2000 in which two cars drove off the cliff in question. (SOF at ¶ 22). Mr. Hasbrouck and Mr. Neff discussed the accident sometime after the 2000 accident. (SOF at ¶ 28-30). Beth Energy, through Mr. Hasbrouck, ordered danger and warning signs to post on the property, to warn of the blind hill as well as other potentially dangerous obstacles. (SOF at ¶ 26). Mr. Hasbrouck testified that Mr. Neff personally ordered the danger and warning signs in 2000. (*Id.*). Beth Energy then contracted with MineVironment to continue posting the warning signs and to monitor the recreational vehicle use at Mine 51. (*Id.*).

Mr. Hasbrouck retired in early 2003, and Mr. Neff took over his responsibilities, including that of Mine 51. (SOF at ¶ 32). Beth Energy sold its assets to ISG in April 2003 and Mine 51 was thereafter deeded to Pristine Resources in May of 2003. After the sale, MineVironment continued to provide its services to the Defendants until November of 2003 when its contract was terminated. MineVironment reported directly to Mr. Neff during the time that he was responsible for Mine 51. (SOF at ¶ 26). MineVironment also provided reports to Mr. Neff as well as pictures related to its services upon the termination of the contract. The MineVironment documents included reports describing the recreational vehicle use on the

10

property and pictures of the approach to the blind hill. (Docket No. 67 at p.8 ¶ 6). Defendants admit that when the contract was terminated, Mr. Neff also reviewed the file on Mine 51 and read the newspaper articles describing the 2000 accident. (SOF at ¶ 30). Mr. Neff testified that the contract was terminated with MineVironment because the efforts to keep such recreational activity off of Mine 51, as well as other properties, were futile. (SOF at ¶ 26). After the MineVironment contract was terminated, no warning signs were posted at Mine 51, including in the cliff area. (Docket No. 67 at p.9 ¶ 8). Plaintiffs' accident then occurred in May of 2005. (SOF at ¶ 1).

Additionally, Plaintiffs point out that Defendants also had actual knowledge due to the Vorhes accident in April of 2005. The Plaintiffs specifically point to a letter dated April 26, 2005, sent by the Ellsworth Borough solicitor stating that "off-street" vehicles were riding on the Defendants' property and there had been an accident, referring to the Vorhes accident. (Docket No. 69-9).

Interpreting the evidence in the light most favorable to the Plaintiffs and drawing all reasonable inferences in their favor, as is required at this stage, the Court finds that genuine issues of material fact remain as to Defendants' actual knowledge of the alleged non-obvious dangerous condition at Mine 51. While Mr. Neff has testified that he had no such knowledge, a reasonable jury could find that Defendants did have knowledge based on the other evidence in the record. Further, issues pertaining to a party's knowledge of certain facts are factually intensive, require credibility determinations within the province of a jury and are generally not determined at the summary judgment stage. *See Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988) ("a court should be reluctant to grant a motion for summary judgment when resolution of

the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder.")

As genuine issues of material fact remain as to the knowledge of Defendants of the dangerous condition on Mine 51, the Defendants' Motion for Summary Judgment on that issue is DENIED.

**B. Evidence of Causation**

In their motion, Defendants also argue that the Plaintiffs cannot meet their burden of proving that Defendants' negligence was the cause of the Plaintiffs' deaths, and, as such, Defendants are entitled to summary judgment. (Docket No. 65). For the following reasons, this argument fails to persuade this Court.

In support of their argument, the Defendants state that the only evidence that Plaintiffs provide as to what caused the Creeks to go over the cliff is that the ATV was found at the bottom of the cliff and that tire marks were found leading up to the cliff and on the cliff face. (Docket No. 65 at 20-21). Defendants contend that this evidence is insufficient and that the jury will be forced to speculate or guess whether the alleged hidden danger of the cliff was the cause in fact of the Plaintiffs' fall and deaths. (Docket No. 65 at 18).

As stated in this Court's recent opinion of *Newton v. Norfolk Southern Corp.*, Civil Action No. 05-01465, 2008 WL 55997 (W.D.Pa. Jan. 3, 2008), the standard of legal causation in Pennsylvania is as follows:

> "[c]ause in fact or 'but for' causation requires proof that the harmful result would not have come about but for the conduct of the defendant. Proximate cause, in addition, requires proof that the

defendant's conduct was a substantial contributing factor in bringing about the harm alleged. Where the relevant facts show either that the defendant was not responsible for the injury, or that the causal connection between the defendant's negligence and the plaintiff's injury is remote, the question of causation is decided by the court as a matter of law." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366-67 (3d Cir.1990). "[T]he term 'cause in fact' embraces all things which have so far contributed to the result that without them it would not have occurred." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 265 (5th ed.1984). It is the plaintiff's burden to prove that the harm suffered was caused, both factually and legally, by the defendant and that burden must be sustained by a preponderance of the evidence. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284 (Pa.1978).

Proximate cause is a question of law that may be decided by the judge on summary judgment. *Reilly v. Tiergarten Inc.,* 633 A.2d 208, 210 (Pa.Super 1993); *Cuthbert v. City of Philadelphia*, 417 Pa. 610, 209 A.2d 261, 264 (Pa.1965). Cause in fact is a factual question for the jury, however, the issue of cause in fact may not be given to the jury if it would require guessing or speculation to determine cause. *Smith v. Bell Tel. Co. of Pa.*, 397 Pa. 134, 153 A.2d 477, 479 (Pa.1959) "We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based." *Smith*, 153 A.2d at 479 (citations omitted).

*Newton,* 2008 WL 55997 at *4-5. The United States Court of Appeals for the Third Circuit, interpreting the Supreme Court of Pennsylvania's decision in *Smith*, has held that a "plaintiff's prima facie case must be such that the jury, by drawing logical inferences from the evidence, in the light of their own knowledge and experience, can reasonably reach the conclusion sought by the plaintiff, even though a contrary finding could rationally be based on the same evidence." *Rumsey v. Great Atlantic & Pac. Tea Co.*, 408 F.2d 89, 93 (3d Cir. 1968). However, "the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a

jury to find it probably happened that way." *Saldana v. Kmart Corp.*, 260 F.3d 228, 234 (3d Cir. 2001).

The Defendants argue that there is no way to logically infer that the Plaintiffs went over the cliff because of its alleged non-obvious dangerous condition rather than a reasonable alternative such as "[the Plaintiffs] could have been stopped to look out over the embankment, intended to back up, but inadvertently pulled forward."[6] (Docket No. 65 at 21). Defendants cite to this Court's recent decision in *Newton*, where the Court was faced with a similar problem of causation and reasonable alternative inferences. *Newton*, however, is distinguishable from this case.

In addition to the physical evidence of the tire marks on the cliff edge and cliff face, the present Plaintiffs put forth potential expert opinions that the Plaintiffs would have been unable to stop their ATV upon discovering the cliff, even if they were traveling at a relatively slow speed.[7]

---

[6]

To the extent that Defendants are arguing contributory or comparative negligence, the Court notes that both are defenses that Defendants bear the burden of proving at trial. *See Marks v. Swayne*, 549 Pa. 336, 701 A.2d 224, 227 (Pa. 1997).

[7]

The Court notes that Defendants have filed a "Motion in Limine to Preclude Plaintiffs' Expert Testimony" challenging the admissibility of the proposed expert testimony of Mr. Kassekert under Federal Rule of Evidence 702. (*See* Docket No. 79). While the filing of such Motion by Defendants is procedurally defective under Section II(I.) of this Court's Practices and Procedures, which states that "[d]eadlines for filing motions in limine, with their supporting briefs will be set forth in the Court's final pretrial order" and the Court has yet to enter a pretrial order in this case, the Court finds that Defendants' arguments contained therein do not warrant the exclusion of the proffered expert opinion on the cause of the accident at the summary judgment stage of the proceedings.

For expert testimony to be admissible under Rule 702, the expert must be qualified, testify about matters requiring technical, scientific or specialized knowledge and such testimony must assist the trier of fact. *Kannankeril v. Terminix International*, 128 F.3d 802, 806 (3d Cir. 1997). In their reply brief, Defendants concede that "<u>Plaintiffs offer evidence that Mr. Kassekert is qualified as an accident reconstructionist, which he undoubtedly is. Indeed, Defendants have never challenged Mr.</u>

(*See* Docket No. 73-7). "The use of opinion evidence in the form of an affidavit is appropriate to support or oppose a motion for summary judgment. Opinion testimony that would be admissible at trial may be considered." *PNC Bank v. Liberty Mutual Insurance Co.*, 912, F.Supp. 169, 176 (W.D.Pa. 1996) (citing *Paton v. La Prade*, 524 F.2d 862, 871 (3rd Cir. 1975); *Shaw by Strain v. Stackhouse*, 920 F.2d 1135, 1144 (3rd Cir. 1990)). Plaintiffs' potential expert, Dennis Kassekert, opines that "based on the sight distance information discussed in the depositions, Mr. Creek could not have realized that there was a dangerous cliff ahead of him and could not have stopped his ATV in time before going over the cliff, even if he had perceived and reacted to its presence in an alert 1 second." (Docket No. 73-7 at 5). In *Newton,* the plaintiffs did not put forth an expert report offering an opinion in support of their causation argument.

---

Kassekert's expertise in that area." (Docket No. 86 at 1) (emphasis added). As the parties agree that Mr. Kassekert is qualified to offer an expert opinion to reconstruct the accident under Rule 702, the Court need not further investigate his qualifications to offer such an opinion. Defendants also do not challenge Mr. Kassekert's methodology as to causation (reconstruction of the accident), and, in their reply Defendants accept Plaintiffs' proffer of the standardized texts relied upon by Mr. Kassekert in reaching his opinion. (*See* Docket No. 86 at 2). Defendants' main argument as to causation is that the expert testimony is not based on sufficient evidence to support the testimony which is therefore not relevant or helpful to the trier of fact. (Docket No. 86). Defendants argue that the proposed expert testimony is not relevant because "[t]here is simply no evidence of what the decedents were doing before the vehicle went over the embankment." Subsequently in a footnote, they concede that their own expert, Robert L. Miller, in his report, concluded that "there is evidence from marks on the face of the embankment on which to conclude that the ATV was moving slowly." (Docket No. 86 at 2, note 2). The proffered expert testimony is sufficient to support Plaintiffs' argument that genuine issues of material fact are present to defeat Defendants' motion for summary judgment.

Defendants also maintain that "[t]he primary basis for defendants' Motion in Limine was that Mr. Kassekert has no expertise regarding property ownership and management of large undeveloped private property and that his opinions critical of the defendants' management of the property are therefore inadmissible." (Docket No. 86 at 1). This portion of Mr. Kassekert's expert report is not relevant to the Defendants' causation argument advanced by its motion for summary judgment. Hence, the Court need not rule or offer an opinion as to the admissibility of this portion of his proffered opinion testimony at this time. Defendants may still seek to challenge same by way of a *Daubert* motion closer to the time of trial.

Additionally, *Newton* involved a fall in a bathtub, which was admitted by the plaintiffs to "become slippery when used." *Newton*, 2008 WL 55997 at *6. This admission supported an alternative inference that the injured plaintiff's fall was caused by the soapy tub floor rather than a defective bath mat. *Id*. Here, cliffs are ordinarily dangerous, but if it were to be determined that the cliff was a non-obvious danger and said expert testimony is found more credible than Defendants' expert then a jury could make a finding of liability without resorting to guesswork or speculation. To that end, based upon the proffered evidence and expert report, it could be a logical conclusion for the jury to find that the alleged dangerous nature of the cliff caused the Plaintiffs' fall. Thus, the Plaintiffs have demonstrated a genuine material issue of fact as to causation. For that reason the Defendants' Motion for Summary Judgment on the issue of causation is likewise DENIED.

## VI. CONCLUSION

Based upon the foregoing, Defendants' Motion for Summary Judgment [64] is hereby **DENIED**. The Court finds that genuine issues of material fact remain as to the Defendants' knowledge of the dangerous condition on Mine 51, as well as to the cause of the Plaintiffs' accident and related deaths. An appropriate Order follows.

s/ *Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 14, 2008

cc/ecf: All counsel of record